FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 0 6 2023

MITCHELL R. ELFERS
CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIMINAL NO. 23-1355 JB |
| | ) |
| vs. | ) Counts 1-2:  18 U.S.C. § 1344:  Bank |
| | ) Fraud; 18 U.S.C. § 2:  Aiding and |
| **JACQUELINE RASCON-CHACON,** | ) Abetting; |
| **BRYAN GARDEA**, and **RICARDO** | ) |
| **LANDEROS,** | ) Count 3:  18 U.S.C. § 1349:  Conspiracy |
| | ) to Commit Wire Fraud; |
| Defendants. | ) |
| | ) Counts 4-10:  18 U.S.C. § 1343:  Wire |
| | ) Fraud; 18 U.S.C. § 2:  Aiding and |
| | ) Abetting; |
| | ) |
| | ) Count 11:  18 U.S.C. § 1956(h): |
| | ) Conspiracy to Commit Money |
| | ) Laundering; |
| | ) |
| | ) Counts 12-14:  18 U.S.C. § 1957(a): |
| | ) Engaging in Monetary Transactions in |
| | ) Property Derived from Specified Unlawful |
| | ) Activity; 18 U.S.C. § 2: Aiding and |
| | ) Abetting. |

## I N D I C T M E N T

The Grand Jury charges:

### General Allegations

1.      At all times relevant to this indictment, the defendants **JACQUELINE**

**RASCON-CHACON, BRYAN GARDEA**, and **RICARDO LANDEROS** were individuals

residing in the District of New Mexico.

2.      At all times relevant to this indictment, the defendant **RASCON-CHACON** was

the sole authorized signatory on a Wells Fargo business bank account ending in 6927 in the name

of JAGA Networks LLC.

3.      At all times relevant to this indictment, the defendant **RASCON-CHACON** was the sole authorized signatory on a Wells Fargo business bank account ending in 6935 in the name of JAGA Networks LLC.  Documents associated with this account indicated that the defendant **RASCON-CHACON** was the "owner" and "managing member" of JAGA Networks LLC.

4.      At all times relevant to this indictment, the defendant **RASCON-CHACON** was the sole signatory on a Wells Fargo business bank account ending in 7377 in the name of JAGA Networks LLC.  Documents associated with this account indicated that the defendant **RASCON-CHACON** was the "Sole Owner" of JAGA Networks LLC and that the company had three employees.

5.      On or about September 18, 2020, the defendant **LANDEROS** opened a Wells Fargo bank account ending in 0624 in the name of Ricardo I. Landeros.  The defendant **LANDEROS** was the owner and sole authorized signatory on this account.

6.      On or about September 23, 2020, the defendant **RASCON-CHACON** opened a Sandia Labs Federal Credit Union ("SLFCU") business bank account with a member number ending in 4011 in the name of JAGA Networks LLC.  This account had three sub-accounts also in the name of JAGA Networks LLC: a savings account under the member number ending in 4011 with an account number ending in 0001 (hereinafter "SLFCU 4011-0001"), a checking account under the member ending in 4011 with an account number ending in 9001 (hereinafter "SLFCU 4011-9001"), and a checking account under the member number ending in 4011 with an account number ending in 9002 (hereinafter "SLFCU 4011-9002").

7.      On or about September 23, 2020, the defendant **RASCON-CHACON** opened two personal sub-accounts at SLFCU under a member number ending in 3972: a savings account

2

ending in 0001 (hereinafter "SLFCU 3972-0001") and a checking account ending in 9001 (hereinafter "SLFCU 3972-9001").

8. Sega Wireless LLC, a corporate entity, was organized in New Mexico on or about June 11, 2015 and the organizing documents list "Bryan Gartea" as the registered agent.  On or about September 29, 2017, a Certificate of Amendment was filed with the New Mexico Secretary of State to change the name of the entity to Sega Communication LLC.

9. JAGA Networks LLC, a corporate entity, was organized in New Mexico on or about June 25, 2019 and the organizing documents list the defendant **RASCON-CHACON** as the organizer, member, and registered agent.

10. A&R Drilling LLC, a corporate entity, was organized in New Mexico on or about October 5, 2019 and lists the defendant **LANDEROS** as the organizer and registered agent.

11. Future Satellite LLC, a corporate entity, was organized in New Mexico on or about February 7, 2017 and lists the defendant **GARDEA** as an organizer and the registered agent.

12. During the time relevant to this indictment, La Cantina Loca was a sports bar and grill located in Albuquerque, New Mexico and operated by the defendant **LANDEROS**.  La Cantina Loca LLC, a corporate entity, was organized in New Mexico on or about February 9, 2021, and lists the defendant **LANDEROS** as organizer and registered agent.

13. During the time relevant to this indictment, DreamSpring Community Development Financial Institution was a financial institution headquartered in Albuquerque, New Mexico.

### The Small Business Administration

14.     The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.  The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

15.     As part of this effort, the SBA enables and provides for loans with government-backed guarantees to be offered through banks, credit unions, and other lenders.  The SBA also acts as a lender itself in certain loan programs.

### The Paycheck Protection Program

16.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

17.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be determined eligible to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses and (b) number of employees.  These figures were used to calculate the amount

of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

18.     PPP loan applications were processed by participating lenders, including banks and credit unions. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies and the loan was guaranteed by the SBA. Data from PPP loan applications, including information about the borrower, the total amount of the loan, and payroll information including payroll expenses and the number of employees reported by the borrower, was transmitted to the SBA in the course of processing the loan.

19.     Under the terms of the program, PPP loan proceeds were only authorized to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principle of PPP loans were eligible for loan forgiveness provided that the qualifying borrower spent the loan proceeds on permissible expenses within a designated period of time, including spending at least a designated minimum percentage of the funds on payroll expenses.

20.     Once a participating lender funded a PPP loan to a borrower, the lender submitted disbursement details to the SBA E-Tran system through servers located in Sterling, Virginia. The SBA's Denver Finance Center, located in Denver, Colorado, then created payment files and authorized payments of PPP processing fees to the participating lender through the U.S. Treasury's Financial Management System (FMS). The primary server for the FMS is located in Sterling, Virginia. The payment files that were created in Denver, Colorado, were transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri, which then sent instructions for the payment of funds to the Federal Reserve Bank ACH processing site in East Rutherford, New Jersey.

21.     The PPP ended on May 31, 2021.

### *The Economic Injury Disaster Loan Program*

22.     The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners affected by declared disasters.

23.     In addition to authorizing the PPP, the CARES Act, along with the Coronavirus Preparedness and Response Supplemental Appropriations Act, authorized the SBA to extend EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of any advance was determined by the number of employees on the borrower's payroll.  The advances did not have to be repaid.

24.     In order to obtain an EIDL made available under the CARES Act, a qualifying business had to submit an application to the SBA and provide information about its operations, such as the number of employees, the business's gross revenues for the 12-month period preceding the disaster, and the cost of goods sold in the 12-month period preceding the disaster. For EIDLs made available under the CARES Act, the 12-month period preceding the disaster was typically considered to be the year preceding January 31, 2020.  The applicant also had to certify that all of the information in the application was true and correct and agree in the required Loan Authorization and Agreement that the EIDL funds would be used solely as working capital for authorized categories of expenditure, including payroll expenses, sick leave, production costs, debts, rent, and mortgage payments, to alleviate the economic injury caused by the disaster.

25.     The amount of an EIDL, if the application was approved, was determined based, in part, on the information provided in the application about personnel, revenue, and cost of goods sold, as set forth above.  Any funds issued under an EIDL were issued directly by the SBA.  If an applicant for an EIDL also obtained funds under the PPP, EIDL funds could not be used for the same purpose as PPP funds.

26.     Applications for EIDLs made available under the CARES Act were received by SBA using cloud-based platforms.  Servers used in support of the cloud-based platform were located in Des Moines, Iowa, Boydton, West Virginia, and Quincy, Washington.

27.     Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver Colorado, created payment files and authorized payments of the EIDL funds based on the applications.  The disbursement of the EIDL funds occurred via the FMS to the U.S. Treasury and then to the recipient's bank account.  As indicated above, the primary server for the FMS is in Sterling, Virginia.

Counts 1-2

28.     Prior to the passage of the CARES Act, from in or around January 2020 through in or around February 2020, in Bernalillo County in the District of New Mexico, and elsewhere, the defendants, **GARDEA** and **RASCON-CHACON**, knowingly and unlawfully executed and attempted to execute a scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities, and other property owned by, or under the custody and control of, a financial institution, as that term is defined by Title 18 United States Code, Section 20, namely

DreamSpring Community Development Financial Institution ("DreamSpring"), by means of false and fraudulent pretenses, representations and promises.

29.     For the purpose of executing and in order to effect the scheme to defraud, the defendants **GARDEA** and **RASCON-CHACON** signed and submitted loan agreements to DreamSpring containing materially false and fraudulent pretenses, representations, and promises. Among these fraudulent pretenses, representations, and promises, were terms in each loan agreement indicating that the borrower would use the loan proceeds only for the business purposes identified in the loan applications.  The loans were approved and the proceeds of each of the loans were disbursed into the Wells Fargo bank account ending in 6935 in the name of Jaga Networks LLC.

30.     On or about the dates listed below, in Bernalillo County in the District of New Mexico and elsewhere, the defendants, **GARDEA** and **RASCON-CHACON**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities, and other property owned by, or under the custody and control of, DreamSpring, conducted the following transactions:

| Count | On or About Date | Transaction | Amount | Recipient Entity | Defendant |
|---|---|---|---|---|---|
| 1 | January 22, 2020 | Business Loan | $20,000 | Sega Communication (dba "Boost Mobie" [*sic*]) | **RASCON-CHACON** and **GARDEA** |
| 2 | February 27, 2020 | Business Loan | $20,000 | JAGA Network (dba "Boost Mobile") | **RASCON-CHACON** and **GARDEA** |

In violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2.

<u>Count 3</u>

31.     Paragraphs 1 through 27 of the indictment are incorporated in this part of the indictment as if fully re-alleged herein.

32.     From in or around March 2020, and continuing to in or around May 2022, in Bernalillo County, in the District of New Mexico and elsewhere, the defendants **RASCON-CHACON**, **GARDEA**, and **LANDEROS** knowingly, unlawfully, and willfully conspired and agreed to commit wire fraud in violation of 18 U.S.C. § 1343.

<u>Overview of the Conspiracy</u>

33.     The defendants, **RASCON-CHACON**, **GARDEA**, and **LANDEROS**, executed a scheme to defraud lenders and the SBA.  The scheme included submitting loan applications containing materially false pretenses, representations, and promises to participating PPP lenders and to the SBA as well as fabricating supporting documentation.  These loan applications and the associated supporting documentation were submitted through online portals.  In these documents, the defendants misrepresented material information such as the true nature of their businesses, the number of employees, and the payroll expenses of the businesses.  Based on these material misrepresentations, participating PPP lenders and the SBA approved and issued loans to the defendants.  Once the defendants were in receipt of the fraudulently obtained funds, the defendants did not use the loan proceeds in accordance with the applicable rules and guidelines of the PPP and the EIDL program.  Rather, the defendants used the funds for their own personal benefit, including by paying off personal debts, using the funds to purchase luxury goods and services for the defendants, and purchasing real property to be developed and sold for a profit.

Manner and Means

34.     The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

    a.   The defendants used the names of sham, non-existent, or non-operational businesses, to apply for loans under the PPP and EIDL programs.

    b.   The defendants submitted applications for loans under the PPP and the EIDL program using the names of businesses that the defendants did not own and were not associated with, without the knowledge or consent of the actual owner(s) of those businesses.  The defendants directed the proceeds of these loans into accounts they controlled and used them for their own purposes.

    c.   The defendants opened bank accounts under their names and the names of their businesses to receive, deposit, and transfer PPP and EIDL proceeds.

    d.   The defendants submitted falsified and fabricated supporting documentation with their loan applications, including fabricated documentation supporting the payroll information they reported in these applications.

    e.   The defendants submitted the applications and accessed their loan accounts using the internet.

    f.   The defendants used the PPP and EIDL proceeds for unauthorized purposes, including making cash withdrawals for their own use, paying off personal credit card debt, hiring a mariachi band, chartering a private jet from Albuquerque, New Mexico to Las Vegas, Nevada, gambling, and buying real property to be developed and sold for a profit.

g. The defendants caused transmissions that affected interstate commerce by sending wire transfers and by accessing and submitting PPP and EIDL applications online.

Overt Acts

35. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of New Mexico, and elsewhere:

a. On or about March 30, 2020, **GARDEA** caused an application and supporting documentation to be submitted electronically to the SBA requesting that an EIDL loan be issued to borrower Sega Communication LLC. The application and supporting documentation contained materially false pretenses, representations, and promises. The application was approved and approximately $149,900 was disbursed into the Wells Fargo Bank account ending in 6927 held in the name of JAGA Networks LLC on or about May 19, 2020.

b. On or about March 30, 2020, **RASCON-CHACON** caused an application and supporting documentation to be submitted electronically to the SBA requesting that an EIDL be issued to borrower JAGA Networks LLC. The application and supporting documentation contained materially false pretenses, representations, and promises. The application was approved and approximately $149,900 was disbursed into the Wells Fargo Bank account ending in 6935 held in the name of JAGA Networks LLC on or about June 9, 2020.

c.   On or about April 7, 2020, **RASCON-CHACON** caused an application and supporting documentation to be submitted electronically to DreamSpring requesting that a PPP loan be issued to borrower JAGA Networks LLC.  The application and supporting documentation contained materially false pretenses, representations, and promises.  The application was approved and approximately $31,209 was disbursed into the Wells Fargo bank account ending in 6927 held in the name of JAGA Networks LLC on or about April 17, 2020.

d.   On or about April 7, 2020, **GARDEA** caused an application and supporting documentation to be submitted electronically to DreamSpring requesting that a PPP loan be issued to borrower Sega Communication LLC.  The application and supporting documentation contained materially false pretenses, representations, and promises.  The application was approved and approximately $31,209 was disbursed into the Wells Fargo Bank account ending in 6935 held in the name of JAGA Networks LLC on or about April 20, 2020.

e.   On or about April 28, 2020, **GARDEA** caused an application and supporting documentation to be submitted electronically to DreamSpring requesting that a PPP loan be issued to borrower Future Satellite LLC.  The application and supporting documentation contained materially false pretenses, representations, and promises.  The application was approved and approximately $101,015 was disbursed into the Wells Fargo Bank account

ending in 7377 held in the name of JAGA Networks LLC on or about May 14, 2020.

f.  On or about May 8, 2020, the defendants caused an application and supporting documentation to be submitted electronically to DreamSpring requesting that a PPP loan be issued to borrower EC Contractors LLC.  The defendants caused these materials to be submitted without the knowledge or authorization of the owner or appropriate representative of EC Contractors LLC.  The application and supporting documentation contained materially false pretenses, representations, and promises.  The application was approved and approximately $83,330 was disbursed into the Wells Fargo bank account ending in 6927 held in the name of JAGA Networks LLC on or about May 20, 2020.

g.  On or about May 16, 2020, **LANDEROS** caused an application and supporting documentation to be submitted electronically to DreamSpring requesting that a PPP loan be issued to borrower A&R Drilling LLC.  The application and supporting documentation contained materially false pretenses, representations, and promises.  The application was approved and approximately $172,802 was disbursed into the Wells Fargo bank account ending in 6927 held in the name of JAGA Networks LLC on or about May 29, 2020.

h.  On or about June 23, 2020, the defendants caused an application and supporting documentation to be submitted to DreamSpring requesting that a PPP loan be issued to borrower La Joya Construction LLC.  The defendants

caused these materials to be submitted without the knowledge or authorization of the owner or appropriate representative of La Joya Construction LLC. The application and supporting documentation contained materially false pretenses, representations, and promises. The application was approved and approximately $172,800 was disbursed into the Wells Fargo bank account ending in 6927 held in the name of JAGA Networks LLC on or about July 10, 2020.

i.   On or about March 15, 2021, **LANDEROS** entered into a loan agreement with DreamSpring to obtain a PPP loan issued to borrower A and R Drilling LLC. The application and supporting documentation submitted in connection with this loan contained materially false pretenses, representations, and promises. The application was approved and approximately $149,000 was disbursed into the Wells Fargo bank account ending in 0624 held in the name of Ricardo Landeros on or about March 16, 2021.

36.   The defendants also caused to be submitted electronically additional applications and supporting documentation to DreamSpring requesting that additional PPP loans be issued to businesses and purported businesses associated with the defendants, including Future Satellite LLC and Jaga Networks LLC, but these additional loan applications were denied.

37.   The defendants also caused to be submitted electronically to SBA loan modification applications seeking to increase EIDL loan proceeds to be received from SBA in connection with one or more of the loans identified above.

38.     The defendants also submitted loan forgiveness applications for some of the above-described PPP loans, which resulted in substantially all of the remaining loan balances for certain PPP loans being forgiven.

39.     In sum, the defendants obtained at least seven PPP loans and at least two EIDLs, the proceeds of which were deposited into bank accounts controlled by the defendants.  The total proceeds from these loans were at least approximately $1,041,165.00.

In violation of 18 U.S.C. § 1349.

Executions of the Scheme: Counts 4 through 10

40.     Paragraphs 1 through 27 and 31 through 39 are incorporated in this part of the indictment as if fully re-alleged herein.

41.     On or about the dates listed below, in Bernalillo County, in the District of New Mexico and elsewhere, the defendants **RASCON-CHACON**, **GARDEA**, and **LANDEROS**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice, caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce as described below:

| Count | On or About Date | Description of Wire | Amount | Recipient Entity | Defendant |
|-------|------------------|---------------------|--------|------------------|-----------|
| 4 | March 30, 2020 | Application for EIDL Loan | $149,900 | Sega Communication LLC | **GARDEA** |
| 5 | March 30, 2020 | Application for EIDL Loan | $149,900 | JAGA Networks LLC | **RASCON-CHACON** |

| 6 | April 7, 2020 | Application for PPP Loan | $31,209 | JAGA Networks LLC | **RASCON-CHACON** |
| 7 | April 7, 2020 | Application for PPP Loan | $31,209 | Sega Communication LLC | **GARDEA** |
| 8 | April 28, 2020 | Application for PPP Loan | $101,015 | Future Satellite LLC | **GARDEA** |
| 9 | May 16, 2020 | Application for PPP Loan | $172,802 | A&R Drilling | **LANDEROS** |
| 10 | March 15, 2021 | Electronic Submission of Loan Agreement for PPP Loan via Internet | $149,000 | A and R Drilling | **LANDEROS** |

In violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

Count 11

42.    Paragraphs 1 through 27 and 31 through 41 are incorporated in this part of the indictment as if fully re-alleged herein.

43.    From in or around January 2020, and continuing to in or around May 2022, in Bernalillo County, in the District of New Mexico and elsewhere, the defendants **RASCON-CHACON**, **GARDEA**, and **LANDEROS** knowingly, unlawfully, and willfully conspired and agreed with each other and with other persons, both known and unknown to the Grand Jury, to commit certain offenses under Title 18, United States Code, Sections 1956 and 1957, as follows:

      a.    Conducted and attempted to conduct financial transactions in interstate

          commerce, which transactions involved the proceeds of specified unlawful

          activity, that is, wire fraud in violation of Title 18, United States Code,

          Section 1343 and 2, bank fraud in violation of Title 18, United States Code,

16

Section 1344 and 2, and conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. Knowingly engaged, attempted to engage, and caused and aided or abetted others in engaging in monetary transactions by, through, or to a financial institution, affecting interstate commerce, in criminally-derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343 and 2, bank fraud in violation of Title 18, United States Code, Section 1344 and 2, and conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, in violation of Title 18, United States Code, Section 1957.

Manner and Means

44.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a. It was part of the conspiracy that **RASCON-CHACON** maintained control and approval over funds deposited into Wells Fargo accounts ending in 6927, 6935, and 7377, each held in the name of Jaga Networks LLC.

b. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used to receive deposits of PPP loan and EIDL proceeds of approximately $610,041 in 2020 and 2021.

c. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used by **RASCON-CHACON** to remit a cashier's check payable to Fidelity National Title in the amount of approximately $40,230 on or about May 18, 2020 to fund the purchase of vacant land located at 6734 Milpa Alta Rd. NE in Rio Rancho, New Mexico.

d. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used by **RASCON-CHACON** to remit a cashier's check payable to Old Republic Title in the amount of approximately $81,785 on or about June 18, 2020 to fund the purchase of vacant land located at 759 and 763 Taos Place SW in Albuquerque, New Mexico.

e. It was part of the conspiracy that a wire transfer of $10,000 was sent from the Wells Fargo account ending in 6927 to a bank account owned by Paramount Business Jets on or about August 28, 2020.  It was further part of the conspiracy that the defendants traveled by chartered private jet from Albuquerque, New Mexico, to Las Vegas, Nevada on or about September 4, 2020, returning on or about September 7, 2020.

f. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used to make approximately $10,315 in payments credited to a Macy's branded American Express credit card in the name of Jacqueline Rascon-Chacon.

g. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used to make approximately $4,738 in payments to Harbor Group Management, a property management company which managed the apartment complex at which **GARDEA** and **RASCON-CHACON** resided at the time of the payments.

h. It was part of the conspiracy that the Wells Fargo account ending in 6927 was used to fund approximately $44,834 in cash withdrawals between in or around January 2020 and in or around September 2020.

i. It was part of the conspiracy that the Wells Fargo account ending in 6935 was used to receive deposits of business loan proceeds of approximately $40,000 not related to COVID-19 pandemic relief efforts between January and February of 2020. These funds were not used in accordance with the terms of the relevant business loans.

j. It was part of the conspiracy that the Wells Fargo account ending in 6935 was used to receive deposits of PPP loan and EIDL proceeds of approximately $181,109 in 2020.

k. It was part of the conspiracy that the Wells Fargo account ending in 6935 was used to fund purchases at Louis Vuitton totaling approximately $3,692, at Albuquerque Orthodontics totaling approximately $1,609, to United Airlines totaling approximately $2,008, and to various restaurants totaling thousands of dollars.

l.  It was part of the conspiracy that the Wells Fargo account ending in 6935 was used to fund transactions of over $3,000 occurring in Honolulu, Hawai'i and over $5,000 occurring in Las Vegas, Nevada.

m.  It was further part of the conspiracy that that the Wells Fargo account ending in 6935 was used to fund cash withdrawals of approximately $26,914 between in or around January 2020 and in or around November 2020.

n.  It was part of the conspiracy that the Wells Fargo account ending in 7377 was used to receive deposits PPP loan proceeds of approximately $101,015 in 2020.

o.  It was part of the conspiracy that the Wells Fargo account ending in 7377 was used to transfer approximately $101,000 to the Wells Fargo account ending in 6927 on or about May 14, 2020.

p.  It was part of the conspiracy that **LANDEROS** maintained control and approval over funds deposited into a Wells Fargo account ending in 0624, held in the name of Ricardo Landeros.

q.  It was part of the conspiracy that the Wells Fargo account ending in 0624 was used to receive PPP loan proceeds of approximately $149,000 in 2021.

r.  It was part of the conspiracy that the Wells Fargo account ending in 0624 was used by **LANDEROS** to remit a cashier's check payable to Ricardo Landeros in the approximate amount of $143,466 on or about March 22, 2021.  This cashier's check was then deposited into a separate bank account at BBVA in the name of La Cantina Loca, for which **LANDEROS** had signature authority.

s.  It was part of the conspiracy that proceeds of business loans, PPP loans, and EIDLs obtained by the defendants were transferred to SLFCU 4011-0001, SLFCU 4011-9001, SLFCU 4011-9002, and SLFCU 3972-9001 between in or around January 2020 and in or around May 2022.  This included a transfer by two separate checks, each in the approximate amount of $100,000, from the Wells Fargo account ending in 6935 to SLFCU 4011-9001 and SLCFU 4011-9002 on or about September 23, 2020.

t.  It was part of the conspiracy that SLFCU 4011-9001 was used to negotiate a check in the approximate amount of $209,369 on or about February 12, 2021 from Old Republic National Title.  These funds derived from the sale of 759 Taos Place SW, Albuquerque, NM.

u.  It was part of the conspiracy that SLFCU 4011-9001 was used to negotiate a check in the approximate amount of $185,544 on or about March 11, 2021 from Old Republic National Title.  These funds derived from the sale of 763 Taos Place SW, Albuquerque, NM.

v.  It was part of the conspiracy that the vacant land at 6734 Milpa Alta Rd. NE, Rio Rancho, NM was developed by the defendants using proceeds of the business loans, PPP loans, and EIDLs described above.  As developed, the real property located at 6734 Milpa Alta Rd. NE, Rio Rancho, NM, was listed for sale on or about April 15, 2022 with an asking price of $750,000.  The first sentence of the property description posted on one or more public websites read "Absolutely Stunning Quality+Design in this Gorgeous Jaga Custom Home!"

In violation of 18 U.S.C. § 1956(h).

Counts 12-14

On or about the dates set forth below, in Bernalillo County in the District of New Mexico, and elsewhere, the defendants, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal and transfer of U.S. currency, funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343 and 2, bank fraud in violation of Title 18, United States Code, Section 1344 and 2, and conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349.

| Count | Defendant(s) | On or About Date | Monetary Transaction |
|---|---|---|---|
| 12 | **RASCON-CHACON** | May 18, 2020 | Negotiation of cashier's check from Jaga Networks LLC Wells Fargo account ending in 6927 for approximately $40,230 payable to Fidelity National Title. |
| 13 | **RASCON-CHACON, GARDEA, and LANDEROS** | February 12, 2021 | Negotiation of cashier's check from Old Republic Title for approximately $209,368.70 payable to Bryan E. Gardea-Gutierrez and Ricardo I. Landeros, deposited in SLFCU 4011-9001, controlled by **RASCON-CHACON**. |
| 14 | **LANDEROS** | March 22, 2021 | Negotiation of cashier's check from Ricardo Landeros Wells Fargo account ending in 0624 for approximately $143,466  payable to Ricardo Landeros, deposited into BBVA account controlled by **LANDEROS**. |

In violation of Title 18, United States Codes, Sections 1957(a) and 2.

22

## FORFEITURE ALLEGATIONS

Counts 1 and 2 of this indictment are realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. § 1344, the defendants, **JACQUELINE RASCON-CHACON** and **BRYAN GARDEA**, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

1.      MONEY JUDGMENT

A sum of money representing property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction.

If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

Counts 3 through 10 of this indictment are realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. §§ 1343 and 1349, the defendants, **JACQUELINE RASCON-CHACON**, **BRYAN GARDEA**, and **RICARDO LANDEROS**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT

A sum of money representing property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction.

If any of the property described above, as a result of any act or omission of the defendants:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided
    without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

Counts 11 through 14 of this indictment are realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1).

Upon conviction of any offense in violation of 18 U.S.C. §§ 1956 and 1957, the defendants, **JACQUELINE RASCON-CHACON**, **BRYAN GARDEA**, and **RICARDO LANDEROS**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

1.   MONEY JUDGMENT

A sum of money representing property involved in the offense(s) set forth in the Count(s) of conviction and any property traceable to such property.

If any of the property described above, as a result of any act or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

_____|S|_____
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

____